IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

GERMAN RUIZ-FLOREZ,                      )
                                         )
        Petitioner,                      )
                                         )       No. 2:26-cv-02206-TLP-atc
v.                                       )
                                         )
SCOTT LADWIG,                            )
                                         )
        Respondent.                      )
                                         )

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner German Ruiz-Florez, a noncitizen detained in the West Tennessee Detention Facility in Mason, Tennessee, petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.)  The Court ordered Respondent to show cause why the Writ should not be granted. (ECF No. 6.)  Respondent responded.[1]  (ECF No. 8.)  Petitioner replied.  (ECF No. 10.)  And for the reasons below, the Court **GRANTS** the Petition.

## BACKGROUND

Petitioner, a Colombian citizen, unlawfully entered the United States in in February 2022. (ECF No. 8 at PageID 25.)  The Government detained Petitioner upon arrival and then released him as an "Alternate to Detention" ("ATD").  (*Id.*)  He then moved to Memphis, Tennessee, with his wife and two daughters.  (ECF No. 10 at PageID 47.)  Petitioner and his family have filed asylum applications.  (*Id.*)  The Government issued Petitioner an employment authorization

---

[1] In his response, Respondent stated that the Court can decide this matter without oral argument or further briefing.  (ECF No. 8 at PageID 25.)  The Court agrees.

document.  (*Id.*)  And he worked for the past three years for "Dale & Dale" as a general construction worker.  (*Id.*)

On February 9, 2026, the Memphis Fugitive Operations Team re-detained him at the ATD Office after he reported for his physical check-in.  (ECF No. 8 at PageID 26.)  They allege that he violated his ATD conditions.  (*Id.*)  On that basis, the Department of Homeland Security ("DHS") took him into custody.  (*Id.*)  He remains in custody at the West Tennessee Detention Center in Mason, Tennessee.  (*Id.*)

Petitioner alleges that DHS and the Executive Office of Immigration Review ("EOIR") have not granted him a bond hearing.  (*See* ECF No. 1 at PageID 6.)  Instead, DHS and EOIR determined that he is subject to mandatory detention, a change from the decades-long practice of affording noncitizens in Petitioner's position with bond hearings before their removal proceedings.  (*See* ECF No. 1-3.)  The government changed its practice in July 2025, when DHS, the Department of Justice ("DOJ"), and ICE issued a new policy.  *See, e.g.*, *Monge-Nunez v. Ladwig*, No. 25-3043, 2025 WL 3565348, at *1 (W.D. Tenn. Dec. 12, 2025).

According to the new policy, noncitizens who have resided in the United States for over two years and who are apprehended in the interior of the country are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  *Id.*  But before July 2025, DHS afforded those same persons bond hearings under 8 U.S.C. § 1226(a).  *Id.*; *Godinez-Lopez v. Ladwig*, No. 25-2962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  The Board of Immigration Appeals ("BIA") upheld this new policy in the case of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

And for Petitioner, this means that he now faces continued detention without the possibility of bond.  Petitioner alleges that his continued detention under § 1225(b) violates the

INA, his Fourth Amendment right against unreasonable seizure, his Fifth Amendment right to due process, and his Eighth Amendment protection against cruel and unusual punishment.[2] (ECF No. 1 at PageID 6–7.)  He asks the Court to grant his Petitioner and order Respondent to release him or provide him an individualized bond hearing.  (*Id.* at PageID 9–10; ECF No. 10 at PageID 58.)

This is not an issue of first impression before the Court.  And Respondent detaining Petitioner under § 1225(b) instead of § 1226(a) is not an isolated event.  Indeed, the Court has recently considered this same legal question many times and consistently held that "§ 1226 governs the arrest and detention of a noncitizen without an apparent criminal history who has been residing in the United States for over a year."  *Padilla-Ugsha v. Ladwig*, No. 25-3045, 2025 WL 3638007, at *7 (W.D. Tenn. Dec. 15, 2025); *see, e.g.*, *Monge-Nunez*, 2025 WL 3565348, at *6; *Cordova v. Ladwig*, No. 25-3037, 2025 WL 3679764, at *7 (W.D. Tenn. Dec. 18, 2025); *Rios Pena v. Ladwig*, No. 25-3082, 2025 WL 3679766, at *7 (W.D. Tenn. Dec. 18, 2025); *Moreno-Espinoza v. Ladwig*, No. 25-3093, 2025 WL 3691452, at *9 (W.D. Tenn. Dec. 19, 2025); *Urrutia-Diaz v. Ladwig*, No. 25-3098, 2025 WL 3689158, at *7 (W.D. Tenn. Dec. 19, 2025).

Because of the increasing frequency of these habeas petitions, other district courts in this circuit and across the country have also been asked to consider which statutory provision governs.  Many have determined that § 1226(a) fits in this scenario.  *See, e.g.*, *Godinez-Lopez*,

---

[2] To the extent that Petitioner seeks relief based on the conditions of his confinement, "a § 2241 habeas petition is not the appropriate vehicle" for such a challenge. *Velasco v. Lamanna*, 16 F. App'x 311, 314 (6th Cir. 2001); *see Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020).  And because the Court finds that Petitioner is entitled to the discretionary bond process under § 1226 as a matter of statutory interpretation and procedural due process, it is unnecessary to consider his Fourth Amendment claim for now.

2025 WL 3047889; *Lopez-Campos*, 797 F. Supp. 3d at 784; *Barco Mercado v. Francis*, 811 F. Supp. 3d 487 (S.D.N.Y. 2025). Others have not. *See Gonzalez v. Ladwig*, No. 2:26-2017, 2026 WL 413602 (W.D. Tenn. Feb. 13, 2026); *Oropeza-Higareda v. Bullock*, 26-2285, ECF No. 20 (W.D. Tenn.); *see also Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, -- F.4th --, 2026 WL 819258 (8th Cir. Mar. 25, 2026). The Sixth Circuit has heard arguments on this issue but has yet to release an opinion.

## LEGAL STANDARD

A petition for habeas corpus enables a person to challenge the legality of their custody. *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). And its traditional function "is to secure release from illegal custody." *Preiser*, 411 U.S. at 484; *see* 28 U.S.C. 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"). Petitioner here asserts that his custody under 8 U.S.C. § 1225(b)(2)(A) is unlawful.

Sections 1225 and 1226 of the INA typically govern the detention of noncitizens during removal proceedings. *See* 8 U.S.C. §§ 1225, 1226. Section 1225(b)(2)(A) governs the mandatory detention of an "applicant for admission" after an immigration officer has determined that the applicant is not entitled to admission in the United States.

    (b)    Inspection of applicants for admission
        . . .
        (2)    Inspection of other aliens
            (A)    In general
                Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

4

8 U.S.C. § 1225(b)(2)(A).  The INA defines an "applicant for admission" as an alien "present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  And "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Again, detention is mandatory under this section.  *See* 8 U.S.C. § 1225(b)(2)(A).

Section 1226(a) provides for discretionary detention:

(a)     Arrest, detention, and release
        On a warrant issued by the Attorney General, an alien may be arrested and
        detained pending a decision on whether the alien is to be removed from
        the United States. Except as provided in subsection (c) and pending such
        decision, the Attorney General—
        (1)     may continue to detain the arrested alien; and
        (2)     may release the alien on—
                (A)     bond of at least $1,500 with security approved by, and
                        containing conditions prescribed by, the Attorney General .
                        . . .

8 U.S.C. § 1226(a).  But § 1226(c), known as the Laken Riley Act, provides for the mandatory detention of aliens found inadmissible or deportable under specific provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes.  8 U.S.C. § 1226(c).  Aliens arrested and detained under this section "have a right to request a custody redetermination (i.e., bond hearing) before an Immigration Judge."  *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  That immigration judge "evaluates whether there is a risk of nonappearance or danger to the community."  *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).  With those provisions in mind, the Court now turns to the Petition.

5

## ANALYSIS

The issue here is whether § 1225(b)(2)(A) or § 1226(a) applies to Petitioner's detention. These facts and legal issues are not distinguishable from those the Court has decided in the past. So in the interest of judicial economy, the Court addresses the main arguments at issue here— administrative exhaustion, statutory interpretation, and procedural due process—in a more succinct manner than before.

### I.    Administrative Exhaustion

Petitioner has not exhausted his administrative remedies.  (*See* ECF No. 1 at PageID 2.) To do so, he would need to appeal his denial of a bond hearing to the Board of Immigration Appeals ("BIA").  Respondent argues that the Court should require Petitioner to go through that process before considering his Petition.  (ECF No. 8 at PageID 27–28.)

When Congress mandates it, courts require petitioners to exhaust their administrative remedies.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  But when, as here, Congress has not imposed a statutory exhaustion requirement, the decision whether to require a petitioner to exhaust lies within "sound judicial discretion."  *Id.*  In exercising that discretion, the Supreme Court has explained that "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."  *Id.* at 146.  Those institutional interests are "protecting administrative agency authority and promoting judicial efficiency."  *Id.* at 145.

The Supreme Court also identified situations in which the interest of the individual weighs heavily against the institutional interests.  *See id.* at 146–49.  Relevant here, "an administrative remedy may be inadequate where the administrative body . . . has otherwise predetermined the issue before it."  *Id.* at 148 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n.

14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *see also Herr v. U.S. Forest Serv.*, 803 F.3d 822–23 (6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway.") (internal quotations omitted).

The BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (2025) makes requesting a bond hearing from an immigration court futile.  That is because the BIA's decision—which is binding on immigration judges—upholds the very policy Petitioner is challenging here.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 228 (holding that aliens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer" because "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission'"); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025) (reasoning that "administrative review is not likely to change Respondents' position that § 1225(b)(2)(A) applies in this context").  What is more, the BIA lacks authority to review constitutional challenges.  *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006).  This means that Petitioner can only bring his constitutional claims in federal court.

It follows that requiring exhaustion in this case would not further the ends of judicial efficiency and protecting administrative authority because it would only delay the resolution of Petitioner's legal questions.  His individual interest in having prompt access to this forum outweighs any institutional interests at stake.  Requiring Petitioner to wait for the BIA to address

an issue it has already decided creates hardship for hardship's sake.  The Court declines to

impose such a result here.[3]

## II.    Statutory Interpretation

The Parties disagree about whether § 1225(b)(2)(A) or § 1226(a) controls Petitioner's

detention here.  In short, Petitioner argues that § 1225 governs the detention of recent noncitizens

at or near the border and that § 1226 governs the pre-removal detention of noncitizens already

present in the United States.  (ECF No. 10 at PageID 51–52.)  Respondent counters that § 1225

applies to Petitioner because "he is an alien who entered the United States without inspection or

parole and thus was, and remains, an 'applicant for admission' who is treated, for constitutional

purposes, as if stopped at the border."  (ECF No. 8 at PageID 28.)

Familiar principles of statutory interpretation control the analysis.  Courts construe

statutory text "so that effect is given to all its provisions, so that no part will be inoperative or

superfluous, void or insignificant."  *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see* Antonin Scalia and Bryan A. Garner, Reading

Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision

is to be given effect.").  To apply this approach, courts give each word within the statute "'its

ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has

meaning only in context.'"  *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation

modified) (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010, (2017)).

This includes the presumption "that [the] legislature says in a statute what it means and means in

---

[3] Respondent points the Court to a line of cases out of the Ohio's district courts that require
immigration habeas petitioners to exhaust their bond-related administrative remedies before
considering their habeas claims.  (ECF No. 8 at PageID 27 (collecting cases).)  Respectfully, the
Court has reviewed those cases and finds the reasoning unpersuasive for the reasons discussed
above.

a statute what it says." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  For

the reasons below, these principles resolve the dispute in Petitioner's favor.

Detention under § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for

admission, if the examining immigration officer determines that an alien seeking admission is

not clearly and beyond a doubt entitled to be admitted[.]"  8 U.S.C. § 1225(b)(2)(A).  This means

that the alien must be an "applicant for admission" who is "seeking admission" and one who is

"not clearly and beyond a doubt entitled to be admitted."

1225(a)'s "seeking admission" language does not apply to Petitioner under these facts.

"Seeking," of course, implies "some sort of present-tense action."  *Barco Mercado*, -- F. Supp.

3d. --, 2025 WL 3295903, at *5.  And "seeking" suggests action.  With that in mind, to fall under

§ 1225(b)(2)(A), the alien must be *actively* seeking admission, not simply residing in the country

after entering it unlawfully.  Because Petitioner's unlawful entry occurred years ago, the Court is

not persuaded that he was actively seeking admission when ICE re-detained him.[4]

The plain meaning of § 1226 better captures Petitioner's situation.  For example, it

applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by

the Attorney General, an alien may be arrested or detained pending a decision on whether the

alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Again, ICE detained

Petitioner in the interior of the country where he had already resided.  So the Attorney General

has the discretion under this section to "continue to detain [him]" or she "may release [him] on

---

[4] The INA recognizes two classes of aliens who are not seeking admission, but that does not preclude the existence of other alien classes that do not fall under § 1225.  *See, e.g.*, *Padilla-Ugsha*, 2025 WL 3638007.

9

bond." (*Id.*)  She may not, though, deny him the bond hearing to which he is entitled.  *See* 8

C.F.R. § 1236.1(c)(8), (d)(1).

The titles of the statutory provisions also supports this distinction.  *See Godinez-Lopez*,

2025 WL 3047889, at *4.  "[T]he title of a statute in the heading of a section [is a] tool[]

available for the resolution of a doubt" about a statute's meaning.  *Dubin v. United States*, 599

U.S. 110, 121 (2023).  Section 1225's title is "Inspection by immigration officers; expedited

removal of inadmissible *arriving* aliens; referral for hearing."  8 U.S.C. §1225 (emphasis added).

Section 1225's title then envisions *arriving* aliens placed in expedited removal.  But again,

Petitioner was detained far from the border.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287

(2018).  Meanwhile, § 1226's title is "Apprehension and detention of aliens."  8 U.S.C. § 1226.

That title fits here.  Petitioner was apprehended, not while arriving in the United States, but years

later.  And he is *now* detained.  Section 1225's therefore seems inapplicable to aliens in

Petitioner's shoes, but § 1226's title seems spot on.

That is not all.  Respondent's interpretation of § 1225(b) makes § 1226(c)'s mandatory

detention provision superfluous.  To be sure, subsections 1226(c)(1)(E)(i)–(ii) provide for

mandatory detention of certain aliens.  But it applies only to those aliens who both entered the

country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) and who are also

"charged with, . . . arrested for, . . . convicted of . . ." certain crimes.  8 U.S.C. §

1226(c)(1)(E)(i)–(ii).  And so to interpret § 1225(b)(2)(A) as Respondent argues would subject

mandatory detention to every alien who did not lawfully enter the country.  This reading would

strip 1226(c) of meaning.  What is more, Congress only recently added subsection 1226(c)(1)(E)

when it passed the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  The Court declines

to presume that Congress pointlessly amended the statute with a redundant provision when it

10

most recently considered it. *See Bilski v. Kappos*, 561 U.S. 593, 607–08 (2019) ("This would violate the cannon against interpreting any statutory provision in a manner that would render another provision superfluous.").

At bottom, §§ 1225 and 1226 are different statutory provisions that apply to different contexts. And the Supreme Court has already distinguished the two. In *Jennings*, the Court determined that the government may "detain certain aliens seeking admission into the country" and that the § 1225 process "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." 583 U.S. at 287, 289. Whereas § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." 583 U.S. 281, 289 (2018) (emphasis added). Respondent has articulated no compelling reason to stray from this commonsense understanding.

So the Court finds § 1226 governs the detention of an alien like Petitioner, who has no known criminal history and who has been residing in the interior of the United States. Petitioner is therefore subject to the discretionary bond process under § 1226.

### III.    Due Process

Because the Court has found that § 1226(a) applies to Petitioner's detention, he is owed the process given to him under the statute. *See, e.g. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien in [Petitioner's] position has only the rights . . . that Congress has provided by statute."). Petitioner alleges that Respondent violates his due process rights by continuing to detain him. (ECF No. 1 at PageID 6.) Respondent counters that because Petitioner complains that he is detained under the wrong statute, even if his detention is unlawful, it is not unconstitutional. (ECF No. 8 at PageID 30.) Or put another way, Respondent

11

asserts that § 1225 has already afforded Petitioner the due process that Congress chose to provide him.  (*Id.* at PageID 29–30 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).)

The Fifth Amendment of the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.   And to evaluate the level of process owed to a noncitizen, the Sixth Circuit generally "applies the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976)."  *Godinez-Lopez*, 2025 WL 3047889, at *6 (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)).  *Matthews* considers (1) "the private interest that will be affected by the official action" (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

All three factors weigh in Petitioner's favor here.  He has a strong liberty interest in being free from physical detention.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The risk of erroneous deprivation is high here considering that Respondent and the BIA's current position is to afford him no bond hearing whatsoever.  And bond hearings are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties.  So the Court finds that the Government's interest in detaining Petitioner without that procedural safeguard does not outweigh Petitioner's liberty interest or the risk of erroneous deprivation.  In fact, as it stands, Petitioner has no meaningful opportunity for an immigration judge to consider whether he is a danger to society or

a flight risk.  And the fact that Petitioner has been residing in the United States with no known criminal history further tips the scales in his favor.

This all makes clear that Petitioner is entitled to a bond hearing before an immigration judge.  And not only that, but his continued detention without that bond hearing violates his due process rights.  The Court therefore **GRANTS** the Petition.

### III.    Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (ECF No. 1 at PageID 7.)  Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(b).  Rule 54 requires that claims for attorney's fees and related expenses be made by motion.  Fed. R. Civ. P. 54(d)(2)(A).  Thus, Petitioner must file a motion that complies with Local Rule 54.1(b) to seek attorney's fees and costs.  *See* Loc. R. 54.1(b).

### CONCLUSION

For the reasons above, the Court **GRANTS** the Petition and **ORDERS** Respondent to release Petitioner.  *See Rodriguez v. Woosley*, No. 4:25-CV-168-RGJ, 2026 WL 36345, at *11–12 (W.D. Ky. Jan. 6, 2026) (collecting cases and finding immediate release as a remedy).  And the Court further **ENJOINS** Respondent from pursuing Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A).  If DHS later re-detains Petitioner under § 1226(a), it shall provide him with the bond hearing he is entitled to under that provision.

**SO ORDERED**, this 7th day of April, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

13